IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-120-FL

| | | |
|---|---|---|
| APRIL HUBBARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC. | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 23), and plaintiff's motion to manually file audio/video recordings (DE 35). The summary judgment motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, each motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action against defendant March 30, 2022, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. ("Title VII"), for sex discrimination and retaliation; under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), for age discrimination; and under 42 U.S.C. § 1981 for denying plaintiff the rights secured by Title VII. Plaintiff seeks compensatory damages, injunctive relief, and recovery of her costs.

Following a period of discovery, defendant filed the instant motion, relying upon a statement of material facts and exhibits including the following: (1) a declaration from a member

of defendant's human resources department; (2) plaintiff's deposition; (3) complaints plaintiff lodged with defendant in October 2020 and January 2021 and defendant's responses; (4) several of defendant's generally applicable workplace policies; and (5) an Equal Employment Opportunity Commission ("EEOC") investigative memo.

In response, plaintiff relies upon an opposing statement of facts and exhibits including the following: (1) plaintiff's affidavit; (2) a recording of a conversation between plaintiff and her supervisor; (3) plaintiff's EEOC charge; (4) plaintiff's resume and hiring documents; (5) plaintiff's October 2020 complaint and a disciplinary report issued to her around the same time; (6) plaintiff's January 2021 complaint; (7) correspondence between plaintiff and her supervisors; and (8) recordings of conveyor belts at plaintiff's worksite.[1]

## STATEMENT OF FACTS

Plaintiff is a woman, and was 46 years old when defendant hired her as a part-time package handler at its South Fayetteville location on January 13, 2019. (Def's Stmt. (DE 30) ¶ 2; Pl's Stmt. (DE 33) ¶¶ 17–18).[2] Between October 14, 2019, and January 12, 2020, plaintiff served as a "[s]pecial [a]ssignment [o]perations [m]anager," a seasonal position. (Def's Stmt. ¶ 3). Effective May 30, 2020, defendant promoted plaintiff to an "[o]perations [m]anager" position on the morning shift. In this role, plaintiff was responsible for managing package handlers and ensuring that trucks were loaded. (Def's Stmt. ¶¶ 4–5).

---

[1] These recordings, and the recording of a conversation between plaintiff and her supervisor noted above, are the subject of plaintiff's motion for leave to file audio/video recordings manually. For good cause shown, the court permits plaintiff to file these exhibits manually.

[2] Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in the parties' statements of facts, or portions of such paragraphs, where not "specifically controverted by a correspondingly numbered paragraph in the opposing statement."

2

In February 2020, Gregory Yow ("Yow") assumed the "[s]ort [m]anager" position at the South Fayetteville facility. (Def's Stmt. ¶ 7). In this role, he served as plaintiff's direct supervisor. Yow's direct supervisor was Keith Greenwood ("Greenwood"), the facility's senior manager. (Id.).

On October 3, 2020, plaintiff was involved in an incident with Crystal Westfall ("Westfall"), a third-party service provider's employee. (Def's Stmt. ¶ 8). Defendant investigated the incident internally, and issued a report on October 9, 2020. This report concluded that plaintiff and Westfall had had an argument, which appeared aggressive and hostile to witnesses. (Def's Stmt. Ex. B (DE 31-2) 2–6).[3] Defendant discussed the incident with plaintiff, concluded that plaintiff had not handled the October 3, 2020 incident professionally, and disciplined her. (Def's Stmt. Ex. C (DE 31-3) 2) ("documented discussion"). The documented discussion "serves as a final warning and any further instances [of unprofessional conduct] may and can include termination." (Id.).

On the same day that plaintiff received the documented discussion, she submitted a complaint through defendant's "Alert Line," (hereinafter, plaintiff's "October complaint") through which employees may report concerns online or by phone if they do not feel comfortable speaking to management, or if management has not addressed a concern. (Def's Stmt. Ex. M (DE 31-14) 2). Plaintiff's October complaint alleged that plaintiff reported Westfall for misconduct at the start of October 2020, and that thereafter, she had had "issues" with the other managers at her facility. (See Def's Stmt. Ex. E (DE 31-6) 4). Plaintiff further alleged that the other managers had conspired to instruct the package handlers to falsely report plaintiff for misconduct; that another

---

[3] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

manager, Victor Davis, "has anger issues and constantly threatens the managers over the radio, which creates a hostile work environment"; and that Yow had overridden plaintiff's authority to discipline the package handlers, and discouraged her from requesting help with her workload. (See id.).

Defendant investigated plaintiff's October complaint and concluded that none of plaintiff's allegations could be substantiated, except her complaint that Yow had on one occasion overridden her discipline of a package handler. (See Def's Stmt. Ex. F (DE 31-7) 7).

In December 2020, defendant needed an operations manager for the evening shift, and sought volunteers from the morning shift. Plaintiff ultimately was selected to move to the evening shift. The parties dispute whether the transfer was voluntary, but agree that it occurred. (See Def's Stmt. ¶ 24; Pl's Stmt. ¶ 19).

On January 4, 2021, plaintiff made a second complaint through defendant's Alert Line. (hereinafter, plaintiff's "January complaint"). The January complaint alleged that plaintiff's transfer to the evening shift was retaliation for her October complaint's allegations about "policies that are being broken," and that the other managers were attempting to recruit package handlers to report plaintiff for harassment to have her terminated. (See Def's Stmt. ¶ 28). Defendant investigated these complaints internally and concluded that none of plaintiff's complaints could be substantiated, except that a package handler had behaved disrespectfully to plaintiff, and that Yow had once rescinded discipline plaintiff had issued to another package handler. (See Def's Stmt. Ex. H (DE 31-9) 9–11).

On April 5, 2021, an incident took place between plaintiff and a package handler, Kristopher Gardner ("Gardner"). (Def's Stmt. ¶ 32). Defendant investigated the incident, and learned that plaintiff and Gardner had argued, and had both shown and verbalized threatening

4

behavior. (See id. ¶ 34). Defendant therefore concluded that plaintiff had violated its "Acceptable Conduct Policy" and "Workplace Violence Prevention Policy," and terminated both plaintiff and Gardner. (See Def's Stmt. ¶ 38; Def's Stmt. Ex. A (DE 31-1) ¶ 14).

**COURT'S DISCUSSION**

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary

5

judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

Defendant argues that plaintiff cannot satisfy the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) on her sex and age discrimination claims, and that she has not demonstrated a causal connection between protected conduct and an adverse employment action, as required to sustain a Title VII retaliation claim. The court agrees with each contention.

1. Sex Discrimination Claims

Title VII prohibits discrimination against "any individual with respect to . . . compensation, terms, conditions, or privileges of employment because . . . of sex[.]" 42 U.S.C. § 2000e-2(a)(1); see Perkins v. Int'l Paper Co., 936 F.3d 196, 205 (4th Cir. 2019). Under the McDonnell Douglas

6

framework,[4] a plaintiff must first present a prima facie case by showing that (1) she is a member of a protected class, (2) her employer took an adverse action against her, (3) she had been fulfilling the employer's legitimate expectations at the time of the adverse action, and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 649 (4th Cir. 2021).

If a plaintiff establishes these elements, the burden shifts to the employer to proffer a nondiscriminatory explanation for its actions. Id. at 650. If the employer does so, the burden returns to the plaintiff to show that the employer's explanation was actually a pretext for discrimination. Id. A plaintiff may prove pretext by, for example, demonstrating that the defendant's explanation was false, contradictory, or inconsistent. Id. at 652 (inconsistency or falseness); Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 575 (4th Cir. 2015) (contradictory explanations).

In the disciplinary context, a plaintiff also may rely upon "comparator evidence" to establish a prima facie case or pretext by showing that a similarly situated employee outside the plaintiff's protected class received less severe discipline for comparable offenses. See Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008). However, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Id. "[R]elevant considerations include whether the plaintiff and comparator dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their

---

[4] A plaintiff may also proceed on a theory that direct evidence demonstrates that an impermissible factor motivated an employment decision. See Perkins, 936 F.3d at 206 n.4. However, plaintiff has not offered any direct evidence of sex discrimination, and does not suggest otherwise. (See Pl's Mem. Opp'n (DE 32) 9–13). The court therefore analyzes her sex discrimination claims via the McDonnell Douglas framework.

7

conduct or the employer's treatment of them for it." Cowgill v. First Data Techs., Inc., 41 F.4th 370, 381 (4th Cir. 2022); Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105–07 (4th Cir. 1985) (noting that employees need not be "precise[ly] equivale[ent]" but must be at least comparable).

But ultimately, whether through falseness, inconsistency, comparator evidence, or other avenues, the plaintiff must establish both that the employer's reason was false and that discrimination was the real reason for the challenged action. DeJarnette v. Corning, Inc., 133 F.3d 293, 298 (4th Cir. 1998). The employer's reasons need not be "wise, fair, or even correct," so long as they truly were the grounds for the adverse action. See id. at 299.

      a.      Prima Facie Case

The parties do not dispute that plaintiff is a member of a protected class, women, which satisfies the first element of plaintiff's prima facie case. (See Def's Mem. Supp (DE 24) 12–17).

Next, plaintiff identifies three events she contends constitute adverse employment actions: (1) alleged circumstances in which male managers received more assistance in their job duties than plaintiff, from upper management and from each other (hereinafter, "failure to support" allegations); (2) her reassignment to the evening shift; and (3) her termination.

The court first addresses plaintiff's failure to support allegations. Plaintiff contends that male managers often communicated with each other on a radio frequency other than the one assigned, which left plaintiff "at a disadvantage and uninformed of pertinent information"; that plaintiff "was expected to be cooperative and assist other lines when there were difficulties," but did not receive the same assistance in return from her male colleagues; that the most competent workers were generally assigned to work for male managers; and that plaintiff's managers did not support her application of discipline to her subordinates. (See Hubbard Decl. (DE 32-2) ¶¶ 2, 5–6, 18–19, 21, 24–26).

8

These events do not qualify as adverse employment actions under Title VII. An adverse employment action comes with a "decrease in compensation, job title, level of responsibility, or opportunity for promotion[.]" James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004). Additional or altered duties do not constitute adverse employment actions unless they are so significant as to affect basic terms of employment such as salary or hours. See Holland v. Washington Homes, Inc., 487 F.3d 208, 219–20 (4th Cir. 2007) (stating that reassignment to a more difficult sales area was not an adverse action absent evidence of effects on compensation); see also, e.g., Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1556–57 (D.C. Cir. 1997); Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885–86 (6th Cir. 1996); Thorn v. Sebelius, 766 F. Supp. 2d 585, 591–92, 599 (D. Md. 2011) (holding that assigning plaintiff extra administrative duties did not constitute adverse action).

Here, as an initial matter, plaintiff does not bring forth any evidence of "decrease in compensation, job title, level of responsibility, or opportunity for promotion[.]" James, 368 F.3d at 376. Moreover, although plaintiff suggests she had different or altered duties from some of her co-workers, there is no basis to conclude that such differences impacted basic terms of her employment such as salary or hours. See, e.g., Pate v. Med. Diagnostic Lab'ys LLC, No. 7:19-CV-126-FL, 2021 WL 965906, at *13 (E.D.N.C. Mar. 15, 2021) (holding that supervisor's refusal to train or assist plaintiff, not following up with her regarding performance feedback, and giving her undesirable assignments did not constitute adverse employment actions). Plaintiff's alleged treatment may be characterized as discourteous and unpleasant, but it did not constitute a material change in the conditions of employment, and therefore is not an adverse employment action. Thus, plaintiff's failure to support allegations are insufficient to establish a prima facie case.

9

The court next examines plaintiff's reassignment to the evening shift. Generally, a lateral transfer does not constitute an adverse employment action, unless the reassignment had "some significant detrimental effect[.]" Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999). Defendant therefore argues that this transfer cannot constitute an adverse action because plaintiff's title and pay rate remained the same. (See Def's Mem. Supp. 13–15). However, plaintiff testified at her deposition that she was paid by the hour, and that the evening shift had fewer hours available than the morning shift. (See Hubbard Dep. (DE 31-4) 48:8–49:4). Accordingly, it is plausible to infer that reassignment to a shift with fewer available hours constitutes a de facto reduction in pay, even though plaintiff's wage rate remained nominally the same. The parties dispute whether plaintiff's reassignment was voluntary or not, but because an involuntary transfer under these circumstances would constitute an adverse action, this dispute of fact precludes entry of summary judgment for defendant through the adverse action element of plaintiff's prima facie case.

Because the parties do not address whether plaintiff was fulfilling defendant's legitimate expectations at the time of her transfer, the court assumes without deciding that plaintiff can satisfy this element, and proceeds to the final element of the prima facie case: whether the reassignment occurred under circumstances that raise an inference of discrimination. Sempowich, 19 F.4th at 649–50.

Plaintiff's only link between her sex and her reassignment is her deposition testimony. When asked why she believed her sex played a role in her reassignment, plaintiff responded "because I'm female you put me in situations to where [sic] I can be harmed by a male and that's not right." (Hubbard Dep. 205:1–16). This statement does not reference the reassignment, however, much less point towards any link between that action and plaintiff's sex. Moreover, such mere subjective beliefs are insufficient to create an issue of material fact on this element of the

prima facie case. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 134–35 (4th Cir. 2002). Plaintiff has therefore failed to establish a prima facie case with respect to her reassignment to the evening shift.

Finally, the court turns to plaintiff's termination. Termination is an adverse employment action under the prima facie framework. See Holland, 487 F.3d at 214. As an initial matter, plaintiff fails to demonstrate that her termination raises a reasonable inference of sex discrimination, because plaintiff's replacement came from within the same protected class. See Brown v. McLean, 159 F.3d 898, 905 (4th Cir. 1998) (holding that a plaintiff must "ordinarily" show that his or her replacement came from outside the pertinent protected class); (Def's Stmt. Ex. A (DE 31-1) ¶ 17 ("A female was hired to replace Hubbard[.]")). Plaintiff does not suggest how any recognized exceptions to this general rule might apply here. See Miles v. Dell, Inc., 429 F.3d 480, 489 (4th Cir. 2005); McLean, 159 F.3d at 905–06. Plaintiff thus fails to demonstrate a prima facie case based on her termination. In addition, and in the alternative, for the reasons set forth below, plaintiff fails to demonstrate a genuine issue of fact as to pretext based on her termination.

    b.  Legitimate Justification

Defendant contends that it fired plaintiff for violating its workplace violence and acceptable conduct policies. (Def's Stmt. Ex. A ¶ 14; Def's Stmt. Ex. N (DE 31-15); Def's Stmt. Ex. O (DE 31-16)). Violating such policies is a non-discriminatory reason to terminate an employee. Turner v. Danzig, 8 F. App'x 268, 269 (4th Cir. 2001) (listing "failure to comply with [employer's] policies and procedures" among legitimate reasons for employee's termination); see, e.g., Gibson v. Marjack Co., Inc., 718 F. Supp. 2d 649, 656 (D. Md. 2010) (violation of company

policy); Worster v. U.S. Postal Serv., 132 F. Supp. 2d 397, 406–07 (M.D.N.C. 2001) (making violent threats).

      c.      Pretext

The burden thus returns to plaintiff to demonstrate that defendant's proffered explanation is false and that discrimination was the real reason for her firing. DeJarnette, 133 F.3d at 298. Plaintiff has not done so, for two reasons.

First, in her deposition testimony, plaintiff fails to identify any link between her sex and her firing when asked. Plaintiff instead points to her belief that her superior experience made Yow resentful and jealous, and to her complaints about operational issues at defendant's facility. (See Hubbard Dep. 180:20–181:1, 205:17–206:9). But these beliefs are either too subjective to defeat summary judgment, see Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280–81 (4th Cir. 2000), or lack any link to plaintiff's sex at all. The other record evidence is similarly devoid of any such connection.

Second, plaintiff's primary argument on pretext points to Victor Davis, whom she alleges engaged in similar conduct but received no discipline. But plaintiff has failed to demonstrate that she and Davis are proper comparators. Plaintiff received discipline and a "final warning" for similar misconduct in October, 2020, which informed plaintiff that any further policy violations "will lead to consequences up to and including termination." (Documented Discussion 2 (emphasis added)). The record therefore reflects plaintiff's prior disciplinary history before the April, 2021 incident, but silence about Davis's history. Davis's status as a repeat or first-time disciplinary offender is an important circumstance that might align or differentiate the two employees. See Cowgill, 41 F.4th at 381; Tinsley v. City of Charlotte, 854 F. App'x 495, 504–05 (4th Cir. 2021) (concluding that dissimilar disciplinary histories rendered two employees improper

12

comparators); see also Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 304–05 (6th Cir. 2016) (to similar effect). This absence belies plaintiff's assertion that she and Davis are appropriate comparators, such that Davis's lack of discipline could suggest that plaintiff's firing was pretextual. See Lightner, 545 F.3d at 265.

Plaintiff has failed to present evidence demonstrating that her firing was pretext for discrimination. Accordingly, because none of her sex discrimination claims survives application of the McDonnell Douglas test, they fail as a matter of law.

2. Age Discrimination Claims

Generally, ADEA claims proceed under the same analysis as Title VII claims: a plaintiff may prove his or her case through the McDonnell Douglas framework. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Bodkin v. Town of Strasburg, Va., 386 F. App'x 411, 413 (4th Cir. 2010).[5] In contrast to the Title VII standard, however, an ADEA plaintiff must show that "age was the 'but-for' cause of the challenged employment action." Gross v. FBL Fin Servs., Inc., 557 U.S. 167, 177–78, 180 (2009). "In other words, an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would not have fired her in the absence of age discrimination." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019) (emphasis in original).

Here, plaintiff's ADEA claim fails for many of the reasons that undermine her Title VII claim. First, her failure to support allegations do not constitute adverse employment actions within the meaning of either statute. Second, plaintiff's reassignment allegations do not support a

---

[5] Like under Title VII, an ADEA plaintiff may proceed on a theory that direct evidence demonstrates that an impermissible factor motivated an employment decision. See Palmer v. Liberty Univ., Inc., 72 F.4th 52, 63 (4th Cir. 2023). Plaintiff does not attempt to argue that any direct evidence supports her case, and relies solely upon the McDonnell Douglas framework. (See Pl's Mem. Opp'n 13–16).

13

reasonable inference of discrimination, or of pretext. Plaintiff's only evidence of discrimination is that the other managers, who were not reassigned, were younger than her. (Hubbard Dep. 205:1–12). But an age gap, by itself, is insufficient to demonstrate pretext. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994).

Plaintiff also points to two statements from Yow that relate to age, but which do not support an inference of age discrimination or pretext. First, plaintiff testifies that Yow told her that because she is the oldest employee with the most experience, she should take younger employees under her wing. (Hubbard Dep. 209:11–17). But the first part of this remark is a factual statement and, even drawing all inferences to favor plaintiff, cannot demonstrate age discrimination. See O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 549 (4th Cir. 1995) ("Discriminatory remarks about age, therefore, cannot be stray or isolated statements."), rev'd on other grounds, 517 U.S. 308 (1996). This statement is a mere isolated comment that does not create a reasonable inference of discrimination, or of pretext. See, e.g., Birkbeck, 30 F.3d at 511–12 (holding that "there comes a time when we have to make way for younger people" created no inference of age bias); Smith v. Flax, 618 F.2d 1062, 1066 (4th Cir. 1980) (to similar effect about remark that employer's "future lay in its young [employees]"). Second, plaintiff testifies that after her reassignment, Yow sent a text to all the managers stating "one down, one to go." (Hubbard Dep. 206:13–207:7). But this text does not appear in the record and, as described by plaintiff, does not address plaintiff or age at all. Plaintiff therefore cannot sustain her ADEA claim through summary judgment on the basis of her shift reassignment.

The court considers next plaintiff's termination. Like her Title VII claim, plaintiff's ADEA claim fails because plaintiff cannot demonstrate pretext, for three reasons. First, plaintiff testifies that her age played a role in her firing because her superior experience made her supervisors feel

14

insecure and jealous, and because she complained about operational issues at defendant's facility. (Hubbard Dep. 180:20–181:1, 205:7–206:9). But these are subjective beliefs about others' feelings insufficient to demonstrate pretext, see Hawkins, 203 F.3d at 280–81, or unconnected to plaintiff's age. Second, plaintiff makes comparator arguments about Victor Davis, as in her Title VII claims. But the court has already concluded that Davis is not an appropriate disciplinary benchmark, so comparison between him and plaintiff is not meaningful. Finally, plaintiff argues that a text Yow sent to plaintiff and the other managers that their facility had made new hires and "it's time to get rid of old faces[,]" (Hubbard Decl. 21), demonstrates discriminatory animus. But even viewing this text in the light most favorable to plaintiff and accepting it as creating an inference of discrimination, plaintiff must still overcome the ADEA's demanding causation standard. See Gross, 557 U.S. at 177–78. Plaintiff offers no evidence that defendant would not have fired her absent consideration of age, such as that defendant did not actually believe she violated its workplace policies in April, 2021.

Plaintiff therefore fails to present evidence sufficient to shepherd her ADEA claims through application of the McDonnell Douglas test, and her age discrimination claims fail as a matter of law.

3. Retaliation Claim

Finally, defendant seeks summary judgment against plaintiff's Title VII retaliation claim. Title VII prohibits an employer from retaliating against an employee for complaining about discrimination. Foster v. Univ. of Md. E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). A plaintiff may prove a retaliation claim through the McDonnell Douglas test which, in this context, requires a plaintiff to demonstrate that she engaged in protected activity; that the employer took adverse

action against the plaintiff; and that a causal relationship exists between the protected activity and the adverse action. Id.[6]

Retaliation claims under both Title VII and the ADEA proceed under this same framework, except that Title VII "protected activity" includes complaints of discrimination based upon race, color, religion, sex, or national origin, while "protected activity" under the ADEA includes complaints of discrimination based on age. See Faulconer v. Centra Health, Inc., 808 F. App'x 148, 153 (4th Cir. 2020) (contrasting protected conduct under each statute); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (discussing use of the McDonnell Douglas framework on ADEA retaliation claims).

Here, the alleged circumstances of plaintiff's complaint of discrimination are fatal to her Title VII retaliation claim. As an initial matter, plaintiff presents no evidence that she ever engaged in protected activity covered by Title VII, such as complaining about discrimination based on sex. Plaintiff's only evidence that she engaged in protected conduct is her testimony that she complained about an age-related comment from Yow sometime between August and October, 2020. (See Hubbard Dep. 40:23–42:8). This conduct addresses age and is therefore protected by the ADEA, not by Title VII, but plaintiff's complaint refers only to a retaliation claim under Title VII. (See Compl. ¶¶ 21–26). Protected activity under the ADEA cannot serve as a predicate for a Title VII retaliation claim. See Faulconer, 808 F. App'x at 153; see also, e.g., Triola v. ASRC Mgmt. Servs., 487 F. App'x 611, 613 (2d Cir. 2012) ("[plaintiff's] retaliation claim based on his prior age discrimination complaint [is] not cognizable under Title VII"); Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir. 1999) (to similar effect). Accordingly, plaintiff's Title VII retaliation claim fails on this basis.

---

[6] A plaintiff may also pursue a retaliation claim through direct evidence, see Foster, 787 F.3d at 249, but plaintiff does not attempt to do so here. (See Pl's Mem. Opp'n 16–20).

16

In addition, and in the alternative, plaintiff has not brought forth sufficient evidence to establish an ADEA retaliation claim. Plaintiff lodged multiple complaints with defendant and her managers between September, 2020 and April, 2021. (See generally Def's Stmt. Ex. E; Def's Stmt. Ex. G (DE 31-8); Pl's Stmt. Ex. 10 (DE 32-11); Pl's Stmt. Ex. 11 (DE 32-12); Pl's Stmt. Ex. 13 (DE 32-14)). Such complaints raise concerns that defendant maintained a dysfunctional and unpleasant workplace, without referencing sex or age. (See, e.g., Def's Stmt. Ex. E at 4 (complaining that "management is telling the package handlers to report [plaintiff] to HR in order for [plaintiff] to be terminated[,]" and that plaintiff did not think a proposed schedule change was fair); Def's Stmt. Ex. G at 4–5 (complaining about interpersonal conflict with and among the package handlers, and referring to the October complaint as "a complaint of [sic] policies that are being broken.")). These reports thus do not constitute protected activity for purposes of an ADEA retaliation claim.

The court next considers plaintiff's deposition testimony, where plaintiff describes a complaint that does not appear elsewhere in the record. (Hubbard Dep. 40:23–42:8).[7] It is plausible to infer from this testimony that plaintiff lodged another complaint about a negative, age-related comment sometime between August and October, 2020.[8] Thus, plaintiff complained about

---

[7] Defendant argues that plaintiff's retaliation claim rests entirely on plaintiff's own speculation, which the court should not credit. (See Def's Reply Br. (DE 36) 6). But the court is obliged to view all facts to favor plaintiff under the summary judgment standard, and testimony based on personal experience can create a dispute of material fact even if self-serving and uncorroborated. See Lovett v. Cracker Barrel Old Country Store, Inc., 700 F. App'x 209, 212 (4th Cir. 2017).

[8] The court has concluded above that this particular remark does not raise an inference of discrimination sufficient to demonstrate pretext. An ADEA retaliation claim requires that the employee objectively reasonably believe that the employer violated the ADEA. See Johnson v. Mechs. & Farmers Bank, 309 F. App'x 675, 685 (4th Cir. 2009). Because the court concludes that plaintiff has failed to demonstrate causation, it assumes without deciding that plaintiff reasonably believed that this remark violated the ADEA and that reporting it constituted opposition to age discrimination.

17

age discrimination sometime in this timeframe, and then was reassigned in December, 2020 and fired in May, 2021. (See Hubbard Dep. 40:23–42:8, 47:9–13, 179:6–13).

Plaintiff's deposition testimony therefore describes protected conduct which meets the first element of her prima facie case. Plaintiff has also presented evidence of two adverse employment actions: her reassignment and her termination.

However, plaintiff's claim founders on the final element of the prima facie case: a causal connection between the protected conduct and the adverse actions. Plaintiff presents no evidence, and makes no argument, supporting this element other than the temporal proximity between her protected conduct and the adverse actions. (See Pl's Mem. Opp'n 16–20). But temporal proximity, presented alone, must be very close to support an inference of causation. A lapse of a few months or more defeats an inference of causation based on timing alone. See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 126–27 (4th Cir. 2021) (three-to-four month proximity insufficient); Horne v. Reznick Fedder & Silverman, 154 F. App'x 361, 364 (4th Cir. 2005) (two-month proximity insufficient); see also Igaski v. Ill. Dep't of Fin. & Pro. Regul., 988 F.3d 948, 959 (7th Cir. 2021) ("the two-month gap between [plaintiff's] protected activities and his termination cannot show retaliation on its own"); Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 925 (8th Cir. 2014) ("a one-month or two-month lag is too long absent other evidence").

Plaintiff's timeline does not create an inference of retaliatory causation. Defendant reassigned plaintiff two to four months after her complaint, and fired her seven to nine months after. These gaps in time, standing alone, do not create an inference of causation. E.g., Horne, 154 F. App'x at 364. Accordingly, because plaintiff fails to establish a prime facie case, her retaliation claim fails as a matter of law.

### 4. Hostile Work Environment

To sustain a hostile work environment claim under Title VII or the ADAEA,[9] a plaintiff must prove that he or she (1) experienced unwelcome harassment; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the terms of his or her employment; and (4) a basis exists to impose liability on the employer. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 174–75 (4th Cir. 2009) (Title VII); Baqir v. Principi, 434 F.3d 733, 745–46 (4th Cir. 2006) (assuming without deciding that hostile environment claims are cognizable under the ADEA), abrogated on other grounds by Gross, 557 U.S. 167.

A plaintiff "must clear a high bar" to satisfy the third element. EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). Because Title VII is not a "general civility code" for the workplace, harassing conduct must be so extreme as to amount to "a change in the terms and conditions of employment." Id. Thus, "rude treatment" or "routine difference[s] of opinion and personality conflict[s]" are not actionable under Title VII. Id. at 315–16. Nor are "offhand comments, and isolated incidents[.]" Id. at 315.

Plaintiff's hostile work environment claim fails because she has not introduced evidence creating a genuine issue of material fact on the "severe or pervasive" element. Plaintiff's only allegations of harassment are her failure to support allegations, and that Yow called plaintiff "the oldest [employee] in the building" and remarked that "it's time to get rid of old faces." (Hubbard Dep. 41:1–4; Hubbard Decl. 21). These circumstances cannot meet the "severe or pervasive" standard. The former is mere non-actionable "rude treatment[.]" Sunbelt, 521 F.3d at 315–16. And the latter remarks are "isolated incidents[,]" which are not severe or pervasive. See id. at

---

[9] Plaintiff makes only cursory reference in her complaint to a "hostile work environment," but presents no such claim as one of her claims for relief. (See Compl. ¶¶ 7, 17–30). Nonetheless, out of an abundance of caution, the court assumes that plaintiff lodged such a claim and proceeds to address it.

19

315–19 (holding that "persistent, demeaning, unrelenting, and widespread" harassment and "constant and repetitive abuse" qualified as severe and pervasive); Tims v. Carolinas Healthcare Sys., 983 F. Supp. 2d 675, 682 (W.D.N.C. 2013) (holding that isolated offensive remarks were not severe or pervasive); Murphy v. Danzig, 64 F. Supp. 2d 519, 522 (E.D.N.C. 1999) (to similar effect).

In sum, because plaintiff presents no evidence of severe or pervasive harassment, this claim fails as a matter of law.

5. Section 1981

Finally, plaintiff references a claim under 42 U.S.C. § 1981, (see Compl. ¶¶ 2–3), which prohibits racial discrimination in the making and enforcement of contracts. However, claims for sex or age discrimination are not cognizable under Section 1981's plain terms. See 42 U.S.C. § 1981 ("All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]"); see Crites v. Kaiser Aluminum and Chem. Corp., No. 91-1231, 1992 WL 64873, at *1 (4th Cir. Apr. 3, 1992). Accordingly, plaintiff's claim under § 1981 fails as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE 23) is GRANTED. Good cause having been shown, plaintiff's motion for leave to file audio/video recordings manually (DE 35) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 17th day of October, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge